UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ENBRIDGE ENERGY PARTNERS, L.P.,
a Delaware limited partnership; ENBRIDGE
ENERGY, LIMITED PARTNERSHIP;
ENBRIDGE PIPELINES (LAKEHEAD)
L.L.C., a Delaware LLC; and ENBRIDGE
PIPELINES (WISCONSIN) INC.,
a Wisconsin corporation,

       Plaintiffs,

v.                                                                                                  Case No. 1:13-CV-1289

FREDONIA FARMS, LLC, a Michigan                            HON. GORDON J. QUIST
limited liability company; FRANK K. ZINN,
as Trustee for the FRANK T. ZINN TRUST,
U/A/D 9/20/87,

       Defendants.
_____/

## OPINION REGARDING MOTION TO REMAND

      This action arises out of a release of oil on July 26, 2010 from Plaintiffs' Line 6B pipeline, near Plaintiffs' pump station located in Marshall, Michigan.  Approximately 840,000 gallons of oil flowed into Talmadge Creek, some of which made its way to the Kalamazoo River.  Following the release, the United States Environmental Protection Agency (EPA) and the Michigan Department of Environmental Quality (MDEQ) issued a series of orders pursuant to federal and state law, to remediate areas along the Kalamazoo River and other areas, and to survey and inventory the presence of invasive species in those areas, including property owned by Defendants (Property).

      On November 20, 2013, Plaintiffs filed a complaint seeking a preliminary injunction and order granting access to the Property, pursuant to Part 201 of the Natural Resources and Environmental Protection Act (NREPA), M.C.L.A. § 324.20101 *et seq.*, in the Calhoun County Circuit Court.  Plaintiffs alleged three claims, including a claim for injunctive relief and access

pursuant to Part 201 of NREPA, a claim for tortious interference with advantageous relationship and contract, and a claim for injunctive relief. Plaintiffs alleged that, in order to fulfill their obligations under the various orders, they attempted to negotiate an access agreement to the Property, but Defendants either refused or delayed providing access to Plaintiffs or have placed unnecessary conditions on such access unrelated to Plaintiffs' work. (Compl. ¶¶ 27–28, dkt. # 1-1.) Defendants removed the case to this Court on November 27, 2013, alleging jurisdiction under the substantial federal question doctrine as the basis for removal.[1] (Notice of Removal ¶¶ 9–13, dkt. # 1.)

Plaintiffs have now moved for remand to state court on the basis that this Court lacks jurisdiction because Defendants' notice of removal fails to identify a substantial issue of federal law necessarily arising out of Plaintiff's state-court complaint. As courts of limited jurisdiction, "federal court[s] must proceed with caution in deciding that [they have] subject matter jurisdiction." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1252 (6th Cir. 1996). Removal statutes are thus strictly construed to promote comity and preserve jurisdictional boundaries between state and federal courts. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). "The removing party bears the burden of demonstrating federal jurisdiction, and all doubts should be resolved against removal." *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007) (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006)).

Pursuant to 28 U.S.C. § 1331, "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Court must apply the "well-pleaded complaint rule" in determining whether Plaintiffs' claims "arise[] under" federal law. *Mich. So. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573

---

[1] Defendants also alleged that a prior action captioned *Fredonia Farms, LLC, et al. v. Enbridge Energy Partners, L.P., et al.*, Case No. 1:12-CV-1005, is currently pending before this Court. (Notice of Removal ¶ 1, dkt. # 1.)

(6th Cir. 2002). This rule "requires that a federal question be presented on the face of the complaint." *Id.* (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987), and *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 43 (1908)). "[A] case arises under federal law, for purposes of § 1331, when it is apparent from the face of the plaintiff's complaint either that the plaintiff's cause of action was created by federal law, or if the plaintiff's claim is based on state law, a substantial, disputed question of federal law is a necessary element of the state cause of action." *Id.* (citations omitted).

Defendants' claim of subject matter jurisdiction is based solely on their assertion that Plaintiffs' state-law claims raise a substantial federal question. The substantial-federal-question doctrine applies "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S. Ct. 2841, 2846 (1983). However, "[t]he mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction, either originally or on removal." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) (en banc). Application of the doctrine requires that: "(1) the state-law claim must necessarily raise a disputed federal issue; (2) the federal interest in the issue must be substantial; and (3) the exercise of jurisdiction must not disturb any congressionally approved balance of federal and state judicial responsibilities." *Id.* (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 125 S. Ct. 2363, 2368 (2005)). The Supreme Court has emphasized that the substantial-federal-question doctrine will apply only to a "slim category" of cases. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701, 126 S. Ct. 2121, 2137 (2006).

Defendants contend that Plaintiffs' claims raise substantial and disputed questions of federal law, including "whether, and to what extent, Enbridge can access Fredonia Farms, LLC's property

3

under the Environmental Protection Agency's Orders, the Clean Water Act, the Oil Pollution Act, and the National Contingency Plan regulations." (Defs.' Opp'n Br. at 1.) Defendants further note that Plaintiffs expressly reference various EPA Orders and an EPA Directive in their complaint, and contend that such allegations necessarily raise the issue of whether, and to what extent, Plaintiffs are entitled to access the Property under the EPA Orders and the federal laws under which the EPA Orders were issued. (*Id.* at 6–7.) Relatedly, Defendants contend that even if the MDEQ Consent Order were the only source of Plaintiffs' cleanup obligations, Plaintiffs' claims would nonetheless raise substantial disputed questions of federal law, including whether the requirements the MDEQ Consent Order imposes on Plaintiffs are allowed or superseded by the EPA's mandates and/or whether it is "consistent or in conflict with the federal National Contingency Plan regulations." (*Id.* at 8 (footnote omitted).) In addition, Defendants contend that Plaintiff's tortious interference claim raised a disputed issue of federal law—whether Plaintiffs can seek to hold Defendants liable for civil penalties and fines that the EPA could impose on Plaintiffs if Plaintiffs fail to secure access to the Property. (*Id.* at 8–9.) Plaintiffs respond that, applying the well-pleaded complaint rule, their claims raise solely state-law claims that do not require resolution of disputed issues of federal law, even though Plaintiffs mention EPA orders throughout their complaint. (Pls.' Reply Br. at 2.)

In *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S. Ct. 2363 (2005), the plaintiff filed a quiet title action in Michigan state court, alleging that the defendant's title to certain property was invalid. 545 U.S. at 311, 125 S. Ct. at 2366. Pursuant to a Michigan court rule, the Plaintiff specifically alleged that its title was superior to the defendant's title because the Internal Revenue Service failed to give adequate notice, as required by a federal statute. *Id.* at 314–15, 125 S. Ct. at 2368. The Court concluded that the Defendant properly removed the case based on federal question jurisdiction because whether the plaintiff "was

given notice within the meaning of the federal statute [was] . . . an essential element of its quiet title claim, and the meaning of the federal statute [was] actually in dispute." *Id.* at 315, 125 S. Ct. at 2368. In fact, the Court observed, because the proper interpretation of the federal statute was "the only legal or factual issue contested in the case," its meaning was "an important issue of federal law that sensibly belongs in a federal court." *Id.*

In contrast to *Grable*, Plaintiffs do not allege claims that expressly or implicitly require the interpretation or application of federal law. For example, Count I, which invokes Part 201 of NREPA to obtain an order granting access to the Property, is premised solely on state law and raises no issue of federal law on which the requested relief depends. The specific statutory provision states that "[a] person who is liable under section 20126 . . . may file a petition in the circuit court of the county in which the facility is located seeking access to the facility in order to conduct response activities approved by the department." M.C.L.A. § 324.20135a(1). The "department" is defined as "the director of the [Michigan] department of environmental quality or his or her designee to whom the director delegates a power or duty by written instrument." M.C.L.A. § 324.20101(f). Consistent with these provisions, Plaintiffs allege that the MDEQ has directed them to undertake certain environmental response activities on the Property. (Compl. ¶¶ 23–25.) That Plaintiffs also mention the various EPA Orders and Directive does not transform Plaintiffs' claim seeking access under NREPA to one necessarily raising a disputed issue of federal law. *See Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1064 (6th Cir. 2008) ("A reference to the U.S. Constitution in a complaint should be read in the context of the entire complaint to fairly ascertain whether the reference states a federal cause of action or, as in Warthman's case, simply supports an element of a state claim."); *Williams v. EDCare Mgmt., Inc.*, No. 1:08-CV-278, 2008 WL 4755744, at *6 (E.D. Tex. Oct. 28, 2008) ("It is well established that references to federal rules and regulations in

5

complaints alleging state law causes of action, even if they constitute an element of the plaintiff's claim, may not suffice to render the action as one arising under federal law."). Thus, to the extent that Defendants assert that Plaintiff's NREPA claim for access to the Property raises a federal issue, such issue does not appear on the face of Plaintiffs' well-pled complaint.[2]

Similarly, the Court rejects Defendants' assertion that Plaintiffs' tortious interference claim necessarily raises a disputed issue of federal law. Plaintiffs' tortious interference claim arises solely from state law. Although Plaintiffs allege that their compliance with the EPA's Orders and Directives and the MDEQ's order enables Plaintiffs to avoid civil penalties and fines, Defendants cite no authority for the proposition that federal law controls whether a plaintiff may seek to recover as damages in a state-law tortious interference claim federal statutory fines and penalties imposed as a result of a tortious interference with a contract or an advantageous business relationship. Rather, there is no reason to believe that federal law, rather than Michigan law, would govern the issue of what elements of damage a plaintiff may recover for a state-law tort claim.

For the foregoing reasons, the Court concludes that Defendants have failed to sustain their burden of establishing subject matter jurisdiction. Therefore, the Court will grant Plaintiffs' motion for remand.

An Order consistent with this Opinion will be entered.


Dated: January 3, 2014                             /s/ Gordon J. Quist
                                                  GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE

---

[2] Moreover, there is no indication that Plaintiffs' remediation obligations under the EPA Orders and Directive are actually in dispute.